1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

SAN JOSE DIVISION

7

8    SCOTT JOHNSON,                              Case No. 5:20-cv-02167-EJD

        Plaintiff,

9                                                **ORDER GRANTING IN PART AND**
                                                 **DENYING IN PART MOTION FOR**
10    v.                                         **ATTORNEYS' FEES**

11    PROGRESO DEVELOPMENT, LLC, et al.,         Re: Dkt. No. 20

        Defendants.

12

13        Before the Court is Plaintiff Scott Johnson's motion for an award of attorneys' fees and

14    costs in the amount of $11,610.00 pursuant to 42 U.S.C. § 12205, California Civil Code § 52(a).

15    Dkt. No. 20 ("Motion").  Defendants Progresso Development, LLC ("Progresso") and Meza

16    Corporation ("Meza" collectively "Defendants") oppose the motion on the grounds that the fees

17    requested are unreasonably high.  Having considered the parties papers, the Court GRANTS in

18    part and DENIES in part Plaintiff's motion.

19        **I.    Background**

20        Plaintiff is a person with disabilities who uses a wheelchair for mobility.  On March 31,

21    2020, Plaintiff filed this lawsuit against Defendants as owners and operators of the real property

22    located at 415 S. King Road., San Jose, California, for failure to provide wheelchair accessible

23    parking and wheelchair accessible sales counters as required under the Americans with Disabilities

24    Act ("ADA") and the Unruh Civil Rights Act ("Unruh Act").  *See* Complaint, Dkt. No. 1.

25        On July 17, 2020, Defendants served Plaintiff with an offer of judgment pursuant to Rule

26    68 of the Federal Rules of Civil Procedure, whereby Defendants agreed to remediate their facility

27
28

United States District Court
Northern District of California

1    in compliance with ADA Accessibility Guidelines and Title 24 of the California code of

2    regulations and pay damages to Plaintiff.  Defendants further agreed to pay Plaintiff's reasonable

3    attorneys' fees and litigation expenses.  *See* Notice of Settlement, Dkt. No. 18.

4        **II.    Legal Standard**

5        Both the ADA and the Unruh Act permit recovery of fees by a "prevailing" plaintiff.  42

6    U.S.C. § 12205; Cal. Civ. Code § 55.  Such fee-shifting statutes "enable private parties to obtain

7    legal help in seeking redress for injuries resulting from actual or threatened violation of specific . .

8    . laws."  *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106

9    S. Ct. 3088, 92 L. Ed. 2d 439 (1986), *supplemented,* 483 U.S. 711, 107 S. Ct. 3078, 97 L. Ed. 2d

10   585 (1987). Recovery statutes, however, are not intended "to punish or reward attorneys." *Van*

11   *Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1047 (9th Cir. 2000).  A plaintiff who enters

12   into a legally enforceable settlement agreement is considered a prevailing party.  *Barrios v.*

13   *California Interscholastic Fed'n*, 277 F.3d 1128, 1134 (9th Cir. 2002).  Because Plaintiff has

14   obtained "substantial relief" on "related" claims based on "a common core of facts or . . . related

15   legal theories," the court may award full fees under either the ADA or Unruh Act claim and need

16   not distinguish between the fees awarded under each.  *See El-Hakem v. BJY Inc.*, 415 F.3d 1068,

17   1075–76 (9th Cir. 2005); *see also Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 901–

18   02 (9th Cir. 1995) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 440, 103 S. Ct. 1933, 76 L. Ed. 2d

19   40 (1983)).

20       To calculate recoverable fees, both federal and state courts look to the lodestar method.

21   *See Hensley*, 461 U.S. at 433; *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132, 17 P.3d 735 (2001).

22   The lodestar method is "strong[ly] presum[ed]" to represent a reasonable fee.  *Pennsylvania*, 478

23   U.S. at 565.  The court arrives at this figure by multiplying the number of hours reasonably

24   expended by a reasonable hourly rate.  *Hensley*, 461 U.S. at 433; *Ketchum*, 24 Cal. 4th at 1132.

25   The fee applicant bears the burden of showing that the requested rate is reasonable based on "the

26   prevailing market rate in the community for similar services of lawyers of reasonably comparable

United States District Court
Northern District of California

1   skill, experience, and reputation." *D'Emanuele v. Montgomery Ward & Co.*, 904 F.2d 1379, 1384

2   (9th Cir. 1990) (quotation marks omitted), overruled on other grounds by *City of Burlington v.*

3   *Dague*, 505 U.S. 557, 559, 112 S. Ct. 2638, 120 L. Ed. 2d 449 (1992).  In making this

4   determination, courts look to other decisions in "the forum in which the district court sits," and

5   "accord[s] more weight to ... fee awards made in the last two years." *Barjon v. Dalton*, 132 F.3d

6   496, 500 (9th Cir. 1997); *see also Nadarajah v. Holder*, 569 F.3d 906, 917 (9th Cir. 2009);

7   *Johnson v. Allied Trailer Supply*, No. CIV. 2:13-1544 WBS, 2014 WL 1334006, at *5 (E.D. Cal.

8   Apr. 3, 2014) (citing *Bell v. Clackamas Cty.*, 341 F.3d 858, 869 (9th Cir. 2003) (finding abuse of

9   discretion where district court "appl[ied] market rates in effect more than two years before . . .

10  work . . . performed")).

11          **III.    Discussion**

12                  **A.  Hourly Rates**

13          "Determination of a reasonable hourly rate is not made by reference to rates actually

14  charged the prevailing party. In determining a reasonable hourly rate, the district court should be

15  guided by the rate prevailing in the community for similar work performed by attorneys of

16  comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205,

17  1210–11 (9th Cir. 1986), *opinion amended on denial of reh'g,* 808 F.2d 1373 (9th Cir. 1987)

18  (citation ommitted).  In general, "the relevant community is the forum in which the district court

19  sits." *Barjon*, 132 F.3d at 500.

20          "The hourly rate for successful civil rights attorneys is to be calculated by considering

21  certain factors, including the novelty and difficulty of the issues, the skill required to try the case,

22  whether or not the fee is contingent, the experience held by counsel and fee awards in similar

23  cases." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1114 (9th Cir. 2008).  "While disability

24  access cases are a subset of civil rights practice, it would be naive to equate the level of skill

25  required to litigate a routine disability access case with the level of skill required to successfully

26  litigate a more complicated civil rights case raising novel or complicated constitutional issues."

27  Case No.: 5:20-cv-02167-EJD
    ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS'
28  FEES

*United States District Court*
*Northern District of California*

1    *Johnson v. Wayside Prop., Inc.*, No. CIV. 2:13-1610 WBS, 2014 WL 6634324, at *6 (E.D. Cal.

2    Nov. 21, 2014).  The burden is on the party seeking fees "to produce satisfactory evidence . . . that

3    the requested rates are in line with those prevailing in the community for similar services by

4    lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S.

5    886, 895, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984).

6          Plaintiff seeks an hourly rate of $650 for Russel Handy, $500 for Dennis Price and

7    Amanda Seabock, and $450 for Robert Doyle.  Dkt. No. 20-3, Declaration of Mark Potter in

8    Support of Plaintiff's Motion for Attorney's Fees and Litigation Expenses ("Potter Decl.") ¶¶ 9-

9    12.  Mr. Handy has 19 years of experience in ADA litigation and has prosecuted over a thousand

10   disability rights cases, including over 40 trials.  *Id.* ¶ 9.  Mr. Price graduated law school in 2011

11   and has 9 years of experience, 8 of which he has been litigating disability rights cases.  *Id.* ¶ 10.

12   Ms. Seabock was barred in 2013 and has approximately 7 years of experience litigating disability

13   rights cases.  *Id.* ¶ 12.  Mr. Doyle graduated law school in 1999 and focused on criminal law,

14   family law, and civil litigation before joining the Center for Disability Access in 2019, when he

15   began litigating disability rights cases.  *Id.* ¶ 11.

16         In support of the hourly rates requested, Plaintiff relies on the declarations of Mark Potter,

17   the managing partner of the Center for Disability Access, and John O'Connor, an attorneys' fees

18   expert.  *See generally* Potter Decl.; Dkt. No. 20-5, Declaration of John O'Connor ("O'Connor

19   Decl.").  In his declaration, Mr. Potter describes the background of the Center for Disability

20   Access, as well as the background and qualifications of the attorneys who worked on this matter.

21   Potter Decl. ¶¶ 5-12.  He states that each attorney is "qualified to bill" at the rates Plaintiff

22   requests and that those requested rates are "well within market rates."  *Id.* ¶¶ 5-12, 14.

23         In his declaration, which was prepared for an unrelated matter in October 2019, Mr.

24   O'Connor testified that he is an attorney with nearly 48 years of experience specializing in

25   commercial litigation and serving as an expert on attorneys' fees.  O'Connor Decl. ¶¶ 1-2.  He

26   stated that he has provided fee opinions in approximately ten ADA cases, litigated one ADA case

27

28

1    about 20 years ago, and "keep[s] current on developments in this area." *Id.* ¶ 23.  Mr. O'Connor

2    opined that the most appropriate range for attorneys' fees in a disability rights case in the Bay

3    Area is $450-$750 per hour for partners, and $300-$550 per hour for associates.  He concluded

4    that because Plaintiff's requested rates fall within those broad ranges, they are reasonable.  *Id.* ¶

5    27.

6          Defendants only challenge the hourly rates of Ms. Seabock and Mr. Price.  The Court,

7    therefore, accepts the hourly rates of Mr. Handy, who billed a total of 0.9 hours on this matter, and

8    Mr. Doyle, who billed a total of 0.4 hours.  As to Ms. Seabock and Mr. Price, Defendants argue

9    that a $500 hourly rate is excessive and unjustified.  Opp. at 6.  Specifically, Defendants argue that

10   that Ms. Seabock's seven years of experience and Mr. Price's nine years of experience do not

11   warrant a rate of $500 per hour and suggest that the rate should be between $300 and $400 per

12   hour.

13         The Court agrees.  The requested rates "are all on the higher end of O'Connor's claimed

14   reasonable rates, and Plaintiff's counsel does not adequately justify these specific rates." *Johnson*

15   *v. Li*, No. 5:19-CV-08075-EJD, 2020 WL 3268580, at *3 (N.D. Cal. June 17, 2020) (citing

16   *Johnson v. Baglietto*, No. 19-CV-06206-TSH, 2020 WL 3065939, at *10 (N.D. Cal. May 21,

17   2020).  While courts in this district have "generally approved rates ranging from $350 to $495 in

18   disability cases" for attorneys with 20 or more years of experience, the same does not hold true for

19   more junior attorneys with less than ten years of experience. *Id.* (citing *Johnson v. Rocklin of*

20   *California LLC*, No. 18-CV-06836-VKD, 2019 WL 3854308, at *10 (N.D. Cal. Aug. 16, 2019).

21   Plaintiff's own expert opines that the floor for a reasonable rate in an ADA case in this district is

22   $450 per hour for partners and $300 per hour for associates, with "exceptional awards as low as

23   $250."  O'Connor Decl. ¶ 27.  Mr. Price and Ms. Seabock have nine and seven years of

24   experience, respectively.  This experience justifies their rates being higher than other associates

25   but does not support their rates being higher than some partners.

26         The Court does not find Mr. O'Connor's opinion persuasive on this front.  Another court in

27

28   Case No.: 5:20-cv-02167-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS'
     FEES

United States District Court
Northern District of California

1  this district recently opined on the exact same O'Connor Declaration, noting:

2          In terms of his own litigation career and experience with attorneys' fees,
3          Mr. O'Connor focuses primarily on non-disability, non-civil rights actions
           involving commercial and business litigation, torts, insurance, and litigation
4          against the United States.  [*See* O'Connor Decl. ¶¶ 4-24.]  The non-ADA
           civil rights litigation and the kinds of cases described in Mr. O'Connor's
5          declaration appear much more complex than this action. . . . Mr.
           O'Connor's opinion does not appear to be based on his own practice or a
6          survey of practitioners, but rather a review of case law concerning fees
           awarded in ADA litigation.  [*See* O'Connor Decl. ¶¶ 23, 29, 31-43.]  His
7          declaration lists the cases he thinks the Court should follow and the cases it
           should not, providing what is essentially legal argument and conclusions.
8          *Id.*  "Under Federal Rule of Evidence 702, matters of law are inappropriate
           subjects for expert testimony."  *Hooper v. Lockheed Martin Corp.*, 688 F.3d
9          1037, 1052 (9th Cir. 2012) (affirming district court's refusal to consider
           expert report because the "expert opinion consists entirely of improper legal
10         conclusions.").

11

12 *Johnson v. Baird Lands, Inc.*, No. 18-CV-05365-VKD, 2020 WL 3833278, at *4 (N.D. Cal. July

13 8, 2020).  For the same reasons stated by the Court in *Baird Lands*, this Court does not find the

14 O'Connor Declaration persuasive.

15         Plaintiff argues that the Center for Disability Access employs a unique staffing model by

16 which attorneys become specialized in narrow aspects of the litigation process in order to

17 maximize efficiency on each task.  Motion at 4.  In his declaration, Mr. Potter explains that this

18 structure allows the Center for Disability Access to expend fewer hours on a given case than other

19 staffing strategies might require.  Potter Decl. ¶ 6.  While it does appear that the Center for

20 Disability Access has developed an efficient system for bringing disability rights cases, Mr. Potter

21 does not explain why this structure should bear on the hourly rates charged by the Center's

22 attorneys.  In fact, part of why this staffing structure functions well is because most of the cases

23 the Center handles are straightforward and involve recurring legal issues.  *See Baglietto*, 2020 WL

24 3065939, at *11 ("The sheer number of ADA cases that Johnson's counsel is litigating

25 simultaneously underscores the straightforward nature of their cases").  Plaintiff's counsel

26 concedes that "[t]his case did not present specialized or skillful challenges and was a fairly

27

28 Case No.: 5:20-cv-02167-EJD
   ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS'
   FEES

6

1    straight-forward application of the law." Motion at 17. When a matter "is a relatively simple one,

2    involving straight-forward application of the law, and which does not present novel or difficult

3    issues requiring a high level of skill or specialization," courts have generally found that higher

4    rates are unwarranted. *See Johnson v. Oakwood Ctr. LLC*, No. 19-CV-01582-VKD, 2019 WL

5    7209040, at *13 (N.D. Cal. Dec. 27, 2019).

6          For these reasons, the Court finds the evidence and case law Plaintiff offers in support of

7    his requested fees to be of limited use in determining the prevailing market rate. The Court finds

8    more persuasive several decisions from other judges in this District that have determined fee

9    awards in analogous circumstances. For example, Judge Koh very recently determined that Mr.

10   Price and Ms. Seabock were entitled to a reasonable hourly rate of $350 for work performed in a

11   very similar case. *Johnson v. Cala Stevens Creek/Monroe, LLC*, No. 17-CV-04574-LHK, 2020

12   WL 2556989, at *7 (N.D. Cal. May 20, 2020). Other recent decisions within the last two years

13   also indicate that this rate is appropriate. *See, e.g.*, *Li*, 2020 WL 3268580, at *4 (approving

14   $350/hour for Ms. Seabock and Mr. Price); *Baglietto*, 2020 WL 3065939, at *12 (approving

15   $350/hour for Ms. Seabock); *Baird Lands*, 2020 WL 3833278, at *4 (same); *Oakwood Ctr.*, 2019

16   WL 7209040, at *12 (approving $350/hour for Mr. Price and Ms. Seabock); *Johnson v. Shobeiri*,

17   No. 18-CV-04816-VKD, 2019 WL 5458106, at *8 (N.D. Cal. Oct. 24, 2019) (same); *Shaw v.*

18   *Kelley*, No. 16-CV-03768-VKD, 2019 WL 5102610, at *10 (N.D. Cal. Oct. 11, 2019) (same);

19   *Rocklin of Cal.*, 2019 WL 3854308, at *12 (same).

20         Considering these recent decisions together with the declarations or Mr. O'Connor and Mr.

21   Potter, the Court determines that an hourly rate of $350 for both Ms. Seabock and Mr. Price is

22   reasonable.

23                              **B.  Hours Billed**

24         Having determined the reasonable hourly rate to be applied, the Court proceeds to

25   determine the number of hours reasonably expended on the litigation. *Fischer v. SJB-P.D. Inc.*,

26   214 F.3d 1115, 1119 (9th Cir. 2000). The Court acknowledges that it "may not attempt to impose

27

28

United States District Court
Northern District of California

Case No.: 5:20-cv-02167-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS'
FEES

United States District Court
Northern District of California

1   its own judgment regarding the best way to operate a law firm, nor to determine if different

2   staffing decisions might have led to different fee requests." *Moreno*, 534 F.3d at 1115.  At the

3   same time, however, the Ninth Circuit has recently explained that "district courts have a duty to

4   ensure that claims for attorneys' fees are reasonable, and a district court does not discharge that

5   duty simply by taking at face value the word of the prevailing party's lawyer for the numbers of

6   hours expended on the case.  Rather, a district court must ensure that the winning attorneys have

7   exercised billing judgment." *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1160 (9th Cir.

8   2018) (quotation marks and citations omitted).

9          Mr. Potter's declaration indicates that Plaintiff's counsel altogether expended 21.3 hours

10   litigating this case.  Dkt. No. 20-4, Potter Decl. Ex. 2 ("Billing Statement").  As noted above,

11   Plaintiff's counsel regularly litigates disability rights cases in this district and others.  *Li*, 2020 WL

12   3268580, at *4 ("Plaintiff's lawyers have litigated 'over a thousand' ADA cases in the Northern

13   District of California and approximately 1,500 ADA cases in the Central District of California");

14   *Baglietto*, 2020 WL 3065939, at *12 (noting that Plaintiff's counsel has litigated about 5,000

15   ADA cases in California alone).  As discussed above, Mr. Potter testifies that this prolific

16   litigation has allowed the Center for Disability Access to implement an efficient system of staffing

17   and minimize the number of hours billed on any given case.  Potter Decl. ¶¶ 6-7.

18          Defendants argue that the overall number of hours billed in this case was excessive given

19   that the case spanned only three months and involved no motions, discovery, court appearances,

20   mediation, or even a site inspection.  Specifically, Defendants argue that Plaintiff (1) improperly

21   billed for clerical tasks, (2) billed excessive time for reviewing court communications and docket

22   filings, (3) improperly block-billed, and (4) billed excessive time for drafting the present motion.

23   The Court addresses each concern in turn.

24                                **i.  Clerical Tasks**

25          Purely clerical tasks are generally not recoverable in a motion for attorneys' fees and

26   should instead be subsumed in normal overhead costs.  *Nadarajah*, 569 F.3d at 921 ("[F]iling,

27
28

Case No.: 5:20-cv-02167-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS'
FEES

1    transcript, and document organization time was clerical in nature and should have been subsumed

2    in firm overhead rather than billed at paralegal rates"); *LaToya A. v. San Francisco Unified Sch.*

3    *Dist.*, No. 3:15-CV-04311-LB, 2016 WL 344558, at *9 (N.D. Cal. Jan. 28, 2016) (same); *Yates v.*

4    *Vishal Corp.*, No. 11-CV-00643-JCS, 2014 WL 572528, at *5 (N.D. Cal. Feb. 4, 2014) (same).

5    Defendants challenge a number of instances in which Ms. Seabock billed 0.1 hour for instructing

6    an assistant to perform a task.  For example, on June 16, 2020, Ms. Seabock billed 0.1 hour for

7    "instruct[ing] assistant to contact and communicate with defense counsel re scheduling the joint

8    site inspection" and the next day she billed another 0.1 hour for instructing the assistant to follow

9    up.  Ms. Seabock also billed 0.1 hour for "review[ing] note from assistant re phone call from

10    defense counsel re service."  Billing Statement at 2.

11        The Court agrees with Defendants that communicating with an assistant about

12    administrative and organizational matters is purely clerical and may not be recovered.  *Shaw*, 2019

13    WL 5102610, at *6 (holding that clerical tasks include: instructing assistants to perform tasks like

14    retrieving, filing, or serving documents; sending documents to the client or to opposing counsel;

15    and calling or communicating with the client, opposing counsel, and other about scheduling

16    matters).  Seventeen of Ms. Seabock's billing entries include time spent instructing her assistant,

17    for a total of 2.5 hours.  Some of these entries account for legitimately billed time as well.  *See*

18    *e.g.*, Billing Statement at 5 (billing 0.5 hours for "draft[ing] the Settlement Agreement;

19    *instruct[ing] assistant to email it to defense counsel for review*; review[ing] response received

20    from defense counsel") (emphasis added).  For that reason, the Court finds it appropriate to deduct

21    1.2 hours of clerical time from Ms. Seabock's total hours.

22                                    **ii.   Court Communications**

23        Second, Defendants argue that Plaintiff spent too much time reviewing routine docket

24    entries and court communications.  Plaintiff "assumes the court will agree reading docket entries

25    and court orders is an objectively reasonable endeavor."  Reply at 11.  While the Court agrees that

26    billing for time spent reviewing court orders is generally reasonable, the Court also expects

27

28

Case No.: 5:20-cv-02167-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS'
FEES

United States District Court
Northern District of California

1  counsel in this case to be particularly familiar with the Court's routine docket entries and

2  communications.

3         Indeed, Mr. Potter testified that the attorneys on each specialized team within his firm

4  "become intimately familiar with the Rules of Civil Procedure, the Local Rules of each District

5  Court and the various court Standing Orders . . . This means that these attorneys do not have to bill

6  or spend any time reviewing discovery standards, rules or any local requirements before getting

7  right to drafting." Potter Decl. ¶ 7. Yet on April 1, 2020, Ms. Seabock spent 0.3 hours

8  "review[ing] initial case management scheduling order and other standing orders," neither of

9  which were unique to this case. Billing Statement at 2. Ms. Seabock also billed 0.1 hour for

10 "review[ing] order reassigning the case and notice of eligibility of video recording," referring to a

11 standard notice issued in all cases before this Court, including all of the cases in which Ms.

12 Seabock appears. *Id.* at 4. Defendants further challenge time spent reviewing the summons and

13 the order to show cause in this case. While those items are indeed standard in Plaintiff's litigation,

14 they also involve unique information, such as deadlines, that may require attorney review. The

15 Court, therefore, finds it appropriate to deduct 0.4 hours from Ms. Seabock's time to account for

16 excessive time spent reviewing routine court communications.

17                              **iii.  Block Billing**

18        Next, Defendants argue that counsel improperly block-billed time in this case. "Block

19 billing is discouraged where discrete and unrelated tasks are grouped together because that

20 practice can make it difficult, if not impossible, for the Court to assess the reasonableness of the

21 time spent on each task." *Shaw*, 2019 WL 5102610, at *7. Defendants challenge almost all

22 billing entries that describe more than one task. For example, on March 16, 2020, Ms. Seabock

23 billed 0.7 hours for "[drafting] complaint and related initial filing docs & prepar[ing] interoffice

24 barrier memo and service instructions." The Court finds that this entry involves related tasks that

25 are logically grouped together. The Court finds the amount of time spent in the aggregate for

26 these related pre-filing tasks to be reasonable. Moreover, the majority of the entries Defendants

27

28 Case No.: 5:20-cv-02167-EJD
   ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS'
   FEES

1   challenge involve a task plus time spent instructing an assistant in relation to that task.  The Court

2   has already deducted time for the clerical elements of these entries and does not find a need to

3   deduct additional time.

4               **iv.   The Present Motion**

5   Finally, Defendants argue that the time spent on this motion was excessive.  Mr. Price

6   billed 2 hours for drafting Plaintiff's fee motion "with supporting paperwork," and 0.3 hours

7   drafting the Potter Declaration.  Billing Statement pg. 6.  While two hours would certainly be a

8   reasonable amount of time to draft a motion of this type from scratch or even to do so based on a

9   basic template, the motion filed in this case was nearly identical to the motions for attorneys' fees

10  submitted in Plaintiff's other cases.  The Potter Declaration was similarly drawn almost entirely

11  from existing declarations.  The Court appreciates the efficiencies gained by utilizing templates

12  and understands that it is generally unnecessary to draft unique arguments for each of Plaintiff's

13  cases.  It is not reasonable, however, for Mr. Price to have spent 2.3 hours tweaking those

14  templates to add a limited amount of case-specific information.  The Court, therefore, finds it

15  appropriate to deduct 1 hour from Mr. Price's time.

16  Plaintiff originally estimated that counsel would require an additional 8 hours to review the

17  opposition brief, draft the reply brief, and attend oral argument.  In his reply brief, Plaintiff

18  provided the actual time spent reviewing the opposition (1.9 hours) and drafting the reply (3.4

19  hours).  Unlike the Motion, the opposition brief and reply brief were both unique to this case and

20  involved a significant amount of original drafting.  The Court finds it reasonable to have spent less

21  than two hours reviewing the opposition and less than four hours drafting the 15-page reply

22  largely from scratch.  In his reply, Plaintiff also offered to withdraw the one hour previously

23  allocated for oral argument, which did not ultimately occur.  The Court will deduct the hour for

24  oral argument but will not further deduct from the 5.3 hours spent responding to this Motion.

25              **C.   Lodestar Amount**

26  Based on this analysis, the Court finds that Plaintiff's counsel reasonably billed a total of

27  Case No.: 5:20-cv-02167-EJD

28  ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS'
    FEES

1   16.0 hours as follows: Mr. Handy (0.9 hours at $650/hour = $585); Ms. Seabock (7.6 hours at

2   $350/hour = $2,660); Mr. Price (7.1 hours at $350/hour = $2485); Mr. Doyle (0.4 hours at

3   $450/hour = $180).  The lodestar amount totals $5,910.  The Court finds no basis for any

4   adjustments to this lodestar amount.

5                              **D.  Costs**

6          Section 505 of the ADA authorizes reasonable attorneys' fees, including "litigation

7   expenses and costs," in any action brought under the Act.  42 U.S.C. § 12205.  Plaintiff seeks $845

8   in litigation costs.  This includes $45 in service costs, $400 in filing fees, and $400 in investigative

9   costs.  Defendants do not oppose these costs and the Court finds them to be reasonable.

10         **IV.    Conclusion**

11         For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART**

12  Plaintiff's motion for attorneys' fees and costs.  The Court awards Plaintiff $5,910.00 in attorneys'

13  fees and $845.00 in costs, for a total of $6,755.00.

14         **IT IS SO ORDERED.**

15  Dated: October 19, 2020

16

17                                                    EDWARD J. DAVILA
                                                      United States District Judge
18

19

20

21

22

23

24

25

26

27

28

Case No.: 5:20-cv-02167-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS'
FEES

12